UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

THERESA BULLOCK,                                    CIV. NO. 13-1070(ADM/JSM)

      Plaintiff,                              REPORT AND RECOMMENDATION

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION,
MORTGAGE ELECTRONIC REGISTRATION SYSTEM,
MERSCORP HOLDINGS, INC.,

      Defendants.

The above matter came before the undersigned on Defendants' Motion to Dismiss [Docket No. 9]. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A),(B) and Local Rule 72.1(c) and the Amended Administrative Order issued by Chief Judge Michael J. Davis on October 16, 2013 [Docket No. 22]. This matter was decided on the parties' written submissions

Plaintiff seeks to invalidate the foreclosure of the mortgage on her home. Plaintiff asserts three claims against defendants: (1) quiet title, to determine adverse claims under Minn. Stat. § 559.01; (2) declaratory judgment; and (3) slander of title. For the reasons below, the Court recommends that defendants' Motion to Dismiss be granted and plaintiff's claims be dismissed with prejudice.

## I.    BACKGROUND

Plaintiff sued defendants Federal National Mortgage Association ("Fannie Mae"), Mortgage Electronic Registration System ("MERS"), and MERSCORP Holdings, Inc. ("MERSCORP") (collectively, "defendants"). Complaint [Docket No. 1]. Defendants moved to dismiss plaintiff's Complaint in lieu of answering. [Docket No. 9].

The facts bearing on defendants' motion to dismiss are as follows:  Plaintiff acquired her interest in property in Maple Grove, Minnesota ("Property") in 1996 by Warranty Deed.  Complaint, ¶¶1, 2.  On February 11, 2005, plaintiff executed a note in favor of America's Wholesale Lender and a Mortgage in favor of MERS.  Id., ¶6; Ex. 1 (Mortgage).  Plaintiff specifically denied that any named defendant or predecessor in interest has or had the legal right to declare a default on the note.  Id., ¶7.  Plaintiff pled "on information and belief" that America's Wholesale Lender originated the loan for delivery to Fannie Mae.  Id., ¶8.

On June 6, 2011, Alice Rowe, Assistant Secretary of MERS executed an Assignment of Mortgage from America's Wholesale Lender to BAC Home Loan Servicing, LP ("BACHLS"), and the Assignment was recorded in the Hennepin County Recorder's office on June 21, 2011.  Id., ¶9, Ex. 3 (Assignment of Mortgage).  Plaintiff alleged "on information and belief" that Rowe lacked legal authority to sign the Assignment of Mortgage as she was an employee of Bank of America N.A. ("BOA") on June 6, 2011, there was no recorded evidence of her power, as an employee of BACHLS, to execute documents on MERS' behalf, and a failure to record this power violated Minn. Stat. § 580.02 and Minn. Stat. § 507.413.  Id., ¶10.  On June 28, 2011, BOA recorded a Notice of Corporate Merger evidencing the merger of BACHLS into BOA.  Id., ¶19.

Plaintiff pled "on information and belief" that Fannie Mae acquired its interest in the Mortgage before the foreclosure, and that there was no recorded assignment of the mortgage from MERS, as nominee for America's Wholesale Lender, to Fannie Mae. Id., ¶11.

Plaintiff pled that Fannie Mae invests in mortgage loans originated by sellers and servicers, and Fannie Mae's Seller/Servicer Guides govern the investment relationship and bind the sellers and servicers.  Id., ¶13.  Plaintiff then alleged that the Fannie Mae Seller/Servicer Guide provides that when a servicer assigns a MERS-registered loan to Fannie Mae, the servicer must also execute an assignment of mortgage to Fannie Mae. Id., ¶14, Ex. 4 (excerpt from Fannie Mae Seller Guide).  Plaintiff claimed that according to the Guide, America's Wholesale Lender, Fannie Mae's predecessor, assigned the Mortgage to Fannie Mae, and thus conveyed the mortgagee's power of sale.  Id., ¶15.

Plaintiff alleged that the Peterson, Fram and Bergman ("PFB") law firm commenced foreclosure proceedings despite knowing of an unrecorded assignment to Fannie Mae.  Id., ¶16.  Plaintiff contended that Minn. Stat. § 580.02 requires that all assignments of mortgage be recorded before the commencement of a non-judicial foreclosure, and Minn. Stat. § 507.413 requires that any attorney acting on behalf of an nominee for a mortgagee must record all assignments of mortgage and all powers of attorney before the commencement of non-judicial foreclosure.  Id., ¶¶17, 18.

Plaintiff attempted to enter into a loan modification with BOA and claimed that despite being orally told that a loan modification was "nearing completion," and despite making payments after being told she had been approved for a trial modification, BOA commenced the foreclosure proceedings against her Property.  Id., ¶20-32.

On September 2, 2011, Shamim Ali, Assistant Vice President of BOA "as successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP," executed a Notice of Pendency and Power of Attorney empowering PFB to foreclose and bid in for the Property at a foreclosure sale.  Id., ¶35,

Ex. 5 (Notice of Pendency and Power of Attorney).  This Notice of Pendency was recorded in the Hennepin County Recorder's Office on September 22, 2011.  Id..  Plaintiff pled "on information and belief" that Ali lacked authority to sign the Notice of Pendency and Power of Attorney because BACHLS did not have an interest in the Property as there existed an unrecorded assignment of the mortgage to Fannie Mae.  Id., ¶36.

On May 22, 2012, Yolanda Jackson, Assistant Vice President for BOA, signed a Notice of Pendency of Proceeding and Power of Attorney empowering PFB to foreclose and bid in for the Property at a foreclosure sale.  Id., ¶37, Ex. 6 (Notice of Pendency and Power of Attorney).  The Notice of Pendency and Power of Attorney was recorded in the Hennepin County Recorder's office on May 30, 2012.  Id.  Plaintiff pled "on information and belief" that Jackson lacked signing authority because BOA did not have an interest in the Property as there existed an unrecorded assignment of the mortgage to Fannie Mae.  Id., ¶38.

According to plaintiff, the Fannie Mae Custodial Agreement required the delivery of the original note and assignment of the mortgage to Fannie Mae.  Id., ¶39; Ex. 7 (blank form Custodial Agreement between Fannie Mae and unnamed party).

On May 30, 2012, BACHLS noticed a sheriff's sale of the Property, which was conducted on October 17, 2012.[1]  Id., ¶40; Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record).  PFB appeared at the foreclosure sale and bid in the debt allegedly owing to BACHLS.  Id., ¶40.  The Sheriff's Certificate of Sale and Foreclosure

---

[1]     The foreclosure record indicates that the sale was originally to have taken place on July 27, 2012, but was postponed to October 17, 2012.  Complaint, Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record).

Record was recorded in the Hennepin County Recorder's Office on October 19, 2012. Id., Ex. 8.

Plaintiff pled "on information and belief" that before the sheriff's sale, BACHLS had transferred the power of sale to Fannie Mae through an unrecorded assignment of mortgage. Id., ¶41.

On February 12, 2013, Nina Danielle Escamilla, Assistant Vice President for BOA, signed an Assignment of Sheriff's Certificate conveying the Property from BOA to Fannie Mae. Id., Ex. 9 (Assignment of Sheriff's Certificate). This Assignment was recorded in the Hennepin County Recorder's Office on February 27, 2013. Id. Plaintiff pled "on information and belief" that Escamilla lacked signing authority because at the time she signed the Assignment, BOA had no interest in the Property and therefore, the Assignment was "invalid." Id., ¶43

Plaintiff claimed that on or about April 13, 2011, an unnamed party[2] received constructive notice that BOA had engaged in "unsafe and unsound" banking practices in conducting foreclosures based on an Order and Consent Decree between BOA and the Officer of the Comptroller of the Currency in which BOA agreed that it would comply with Fannie Mae servicing guidelines and MERSCORP rules. Id., ¶¶44, 45, Ex. 10 (Consent Order). In connection with the Consent Order, MERS revoked the authority to initiate foreclosures in MERS's name after July 22, 2011. Id., ¶¶46, 47. Plaintiff pled "on information and belief" that MERS revoked Rowe's signing authority after July 22,

---

[2]     The Complaint stated: "On or about April 13, 2011[____], received constructive notice. . . ." The Court assumed this was an error based on "cutting and pasting" from other complaints drafted by plaintiff's counsel, William Butler, in which he makes the same allegation. The Court will not "fill in the blank."

2011.[3]  Id., ¶47; Ex. 11 (document entitled "Rule 8 Required Assignments for Foreclosure and Bankruptcy.").

Plaintiff asserted the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. § 599.01, et. seq.  This Count alleged that Defendants" claim to an interest in the Property that was void because: (1) there existed unrecorded assignments of mortgage conveying the mortgagee's power of sale to third parties; (2) BOA did not have the mortgagee's power of sale on the date of the sheriff's sale; and (3) the foreclosure was void because (a) the individuals executing the foreclosure documents did not have the legal authority to execute the documents when signed, and (b) defendants did not record the necessary powers of attorney authorizing the foreclosure.  Id., ¶58.  Plaintiff further alleged that it was defendants'[4] burden to prove its interest in the Property by a preponderance of the evidence.  Id., ¶57.

Count II sought a declaratory judgment pursuant to Minn. Stat. § 555.01 et. seq. that the Assignment of Mortgage and the two Notices of Pendency and Powers of Attorney were void, and plaintiff remained fee owner of the Property.  Id., ¶62.

Count III alleged slander of title based on BOA's recording of documents that were false and not executed by legally authorized persons, and that BOA knew or should have known that the documents were false.[5]  Id., ¶¶64-68.

---

[3]     The Court notes that on June 6, 2011, Rowe, Assistant Secretary of MERS, had already executed the Assignment of Mortgage from America's Wholesale Lender to BACHLS.  Complaint, ¶9, Ex. 3 (Assignment of Mortgage).

[4]     The Court does not know which defendant plaintiff is referencing.

[5]     Notably, BOA is not a defendant in this suit.

As relief, plaintiff sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the Sheriff's Certificate of Sale, the Assignment of Mortgage and the two Notices of Pendency and Power of Attorney were void; and an order that plaintiff is the fee owner of the Property.  Complaint, Prayer for Relief, ¶¶I, II, III.

Defendants moved to dismiss the Complaint, arguing that plaintiff failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  As to the quiet title claim, defendants contended that plaintiff's conclusory and speculative allegations did not meet federal pleading standards; even if the underlying debt had been transferred to Fannie Mae, the quiet title action is unsustainable because Minnesota law only required that assignments of the legal title must be recorded; plaintiff's contention that the individuals executing the Assignment of Mortgage and foreclosure-related documents did not have legal authority to execute them was completely speculative and conclusory; plaintiff has no standing to challenge the Assignment of Mortgage from MERS to BACHLS or compliance with the Fannie Mae Seller/Servicer Guide because she is not a party to the Assignment or the Guide; plaintiff's challenge to BOA's power of sale was futile because the Mortgage was validly assigned to BACHLS, which later merged with BOA; and any claim by plaintiff that defendants failed to record the necessary powers of attorney authorizing the sale, ignored the recorded May 2012 Notice of Pendency and Power of Attorney.  Defendants' Memorandum of Law in Support of Motion to Dismiss [Docket No. 11], pp. 5-14.

In addition, defendants submitted that plaintiff's slander of title claim was meritless because plaintiff alleged no facts to support the elements of the claim,

including false representation, publication with maliciousness, and reliance.  Id., pp. 16-18.   Defendants also noted that all of the malfeasance asserted in this claim was against non-party BOA.  Id., p. 17.   As for plaintiff's declaratory judgment count, defendants asserted that a request for declaratory relief is not an actual cause of action – it is merely a remedy – and as plaintiff's other substantive claims fail, this remedy must fail as well.  Id., pp. 14-16.

For the reasons set forth below, the Court concludes that plaintiff has failed to state a claim for relief and therefore, defendants' motion to dismiss should be granted.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).   In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Iqbal and Twombly.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).  "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(d).  "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Med., Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading

is a part of the pleading for all purposes."); <u>Mattes v. ABC Plastics, Inc.</u>, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

## III.    DISCUSSION

### A.    <u>Quiet Title</u>

In Minnesota, "[a]ny person in possession of real property personally. . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. § 559.01.

Plaintiff argued that her quiet title claim is proper since all she had to plead under Minnesota law was that she was in possession of the Property and defendants had a claim adverse to her.[6]  <u>See</u> Memorandum in Opposition to Federal National Mortgage

---

[6]      The Minnesota Court of Appeals disagrees with plaintiffs' argument that a quiet title claim premised solely on allegations that they were in possession of the Property and defendants had a claim adverse to them states a cause of action under Minnesota law.  In a case similar to the instant suit and relying on the standards for pleading articulated in <u>Twombly</u>, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid. Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss. We disagree.
>
> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." <u>See</u> <u>Hebert [v. City of Fifty Lakes</u>, 744 N.W.2d 226, 229 (Minn.2008)]. Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Association's Motion to Dismiss [Docket No. 20], pp. 13-15.  According to plaintiff, once these elements were pled, the burden shifted to defendants to prove the validity of their claim.  Id.  Further, plaintiff maintained the Federal Rules of Civil Procedure did not alter the burden of proof on her state law quiet title claim.  Id.  Plaintiff then contended she had stated a viable quiet title claim because the foreclosure was void due to BOA's failure to comply with Minn. Stat. § 580.02, which required a default on the Note before it could commence a foreclosure, and she was not in default on her loan.  Id., p. 18.  In support, plaintiff maintained that at the time of the foreclosure she was making payments on the trial loan modification; neither BACHLS, the entity who allegedly declared the default, nor Fannie Mae, were the holder of the Note; and there was an unrecorded assignment of the Mortgage held by Fannie Mae, as demonstrated by its servicing guidelines which BOA agreed to follow in the Consent Order.  Id., pp. 19-20. Plaintiff's arguments fail for many reasons.

First, plaintiff's argument that the Court should apply the Minnesota state court pleading standards to their quiet title claim, is dead on arrival.  Plaintiff's counsel has made this exact argument in the past, and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law."  Karnatcheva v. JPMorgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied, 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan

Mutua v. Deutsche Bank Nat'l Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013).

Chase Bank, N.A., 518 F. App'x 498, 501 (8th Cir. 2013); 518 (quoting Karnatcheva);

Gharwal v. Federal Nat'l Mortgage Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL

4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely

and repeatedly rejected" this argument).

     In addition, the Eighth Circuit in Karnatcheva rejected the "burden of proof"

argument in a quiet title action advocated by plaintiff.  704 F.3d at 548.  As the court

explained in Gharwal:

> Karnatcheva rejected that argument, specifically holding that
> § 559.01 and the other authority on which [plaintiff] relies
> 'are not state substantive standards that govern the success
> of a quiet title claim.   Karnatcheva, 704 F.3d at 548.
> Whether or not the Eighth Circuit's holding was "error" is not
> for this Court to decide; Karnatcheva is binding precedent,
> and this Court must apply it.  The Court notes, however, that
> although he was addressing a different issue, plaintiff's
> counsel himself has conceded in the past "that, under Fed.
> R. Civ. P. 11, a quiet-title claim must be supported by an
> objectively reasonable basis for believing that the
> defendant's asserted interest in the property is invalid."  Welk
> v GMAC Mortg., LLC, 850 F. Supp.2d 976, 988 (D. Minn.
> 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).  Here, plaintiffs
> quiet title claims are based only on conclusory statements
> and speculation, but no facts.  The claim fails under Rule
> 12(b)(6).

2013 WL 4838904, at *3.

     Thus, this Court has reviewed plaintiff's quiet title claim applying the standard

governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

     Second, plaintiff's wholly unsupported statements on "information and belief"

about the alleged lack of authority by Rowe, Ali, Jackson and Escamilla to sign

documents, and the existence of an unrecorded assignment of the mortgage to Fannie

Mae before the sheriff's sale, utterly fail the pleading requirements governing actions in

this Court.  Complaint, ¶¶9, 16, 36, 38, 43.  While it is true that the "Eighth Circuit has yet to address whether a pleading based on 'information and belief' is sufficient to state a claim," LaCroix v. U.S. Bank, NA, Civ. No. 11–3236 (DSD/JJK), 2012 WL 2357602, at *6 (D. Minn. June 20, 2012), on the other hand, the Eighth Circuit and courts in this District have unequivocally held that conclusory allegations lacking in factual support are insufficient to satisfy the Rule 8 pleading standards or the standards articulated in Iqbal and Twombly.  See Karnatvcheva, 704 F.3d at 548; Blaylock v. Wells Fargo Bank, N.A., 502 Fed. Appx. 623, 2013 WL 1688894, at *1 (8th Cir. April 19, 2013) (based on Karnatcheva, dismissed quiet title claim for falling short of federal pleading requirements); Iverson v. Wells Fargo Bank, N.A., 2013 WL 1688903 (8th Cir. April 19, 2013) (unpublished) (same); Sorem v. Bank of New York Mellon, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *2-3 (D. Minn. Aug. 29, 2013); Ko v. Mortgage Elec. Registration Sys., Civ. No. 13-596 (JRT/AJB), 2013 WL 4052680, at *2 (D. Minn. Aug. 9, 2013); Quale v. Aurora Loan Servs., LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) (string citation omitted); Lara v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013); Schumacher v. Federal Home Loan Mortg. Corp., Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, *2 (D. Minn. June 17, 2013).  That is the case here.

Third, the only "factual" support urged by plaintiff to support her claim that there was an unrecorded assignment of the Mortgage from MERS to Fannie Mae before the foreclosure – the Fannie Mae's Seller/Servicer Guide -- cannot overcome the deficiencies in plaintiff's Complaint, much less support a claim that there was an unrecorded assignment from MERS to Fannie Mae.  The language relied upon by

plaintiff from the Fannie Mae Seller/Servicer Guide does not require an actual and present assignment from the servicer to Fannie Mae. Rather, the language simply requires the servicer to prepare an assignment document that can be recorded when and if the mortgage is assigned to Fannie Mae. See, e.g., Richter v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-475 (ADM/JSM), 2013 WL 3223377, at *3 (D. Minn. June 25, 2013) (dismissing the quiet title claim, and stating "[s]imply quoting a Fannie Mae policy document does not plausibly establish how Fannie Mae obtained an unrecorded interest in the Property in this case. Plaintiffs' allegations do not rise above speculation."); Cheng Lee v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-180 (DWF/SER), 2013 WL 2631904, at *2 n.4 (D. Minn. June 12, 2013) ("The only fact even arguably cited in support of the conclusion that there is an unrecorded assignment is that Fannie Mae's Seller/Servicer Guides require that an assignment of mortgage be executed in favor of Fannie Mae. This conclusory allegation is insufficient."); Dunbar v. Wells Fargo Bank, N.A., 853 F.Supp. 2d 839, 848 (D. Minn. 2012), aff'd, 709 F.3d 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo. The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do so. Mere speculation about what may have happened does not allow a plausible inference when defendants present a facially valid record of assignment from Option One to Wells Fargo. As a result, dismissal is warranted."). Thus, the Fannie Mae Seller/Servicer Guide does not provide a plausible inference that an assignment to Fannie Mae actually occurred before the foreclosure.

14

Where the documents referenced in and attached to the Complaint show an unbroken chain of title to BOA as the successor by merger to BACHLS, via a recorded assignment of the Mortgage from MERS to BACHLS on June 6, 2011, and a properly recorded May 22, 2012 Notice of Pendency of Proceeding and Power of Attorney, and there is no evidence of any further transfers of interests in the Property until after the foreclosure sale, when Fannie Mae received an Assignment of Sheriff's Certificate on the Property, (Complaint, Exs. 3 (June 6, 2011 Assignment of Mortgage), 6 (May 22, 2012 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage), 8 (Sheriff's Certificate of Sale and Foreclosure Record, 9 (Assignment of Sheriff's Certificate dated February 12, 2013)), it is implausible that Fannie Mae received an assignment of the Mortgage before the foreclosure. See Welk, 2013 WL 2155463, at *3 ("As Fannie Mae points out, such an assignment would be illogical, because, if Wells Fargo had assigned Mr. Welk's mortgage to Fannie Mae before 2011, there would be no reason for Wells Fargo to deed the property to Fannie Mae in 2011.").

Fourth, even if the Fannie Mae Seller/Servicer Guide governed plaintiff's Mortgage, plaintiff lacks standing to challenge a failure of any assignment required by this document. See Segura v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-531 (SRN/JJK), 2013 WL 3034096, at *3 (D. Minn. June 17, 2013) ("Nor does the Seguras' reliance on the Seller/Servicer Guides or Fannie Mae's Custodial Agreement make their allegation less speculative.  The Guide is, at best, a contract between Fannie Mae and its servicers.  It is not for the benefit of the Seguras and imposes no duties on any entity vis-a-vis the borrower.  The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities.  Even if

Wells Fargo was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not the Seguras, to prosecute."); Welk, 2013 WL 2155463, at *3 ("[the] 'Guide' about which the Amended Complaint makes much hay is, at best, a contract between Fannie Mae and its servicers. It is not for the benefit of [plaintiff] and imposes no duties on any entity vis-a-vis the borrower. So even if Wells Fargo failed to comply with its purported obligations under the 'Guide,' such a failure would be for Fannie Mae, not [plaintiff], to prosecute."); Butler v. Federal Nat'l Mortg. Ass'n, Civ. No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *4 (D. Minn. May 15, 2013) (finding that as plaintiff was not a third-party beneficiary of the Fannie Mae Seller/Servicer Guide, "the contract and its requirements are simply not relevant to any harm [he] may have suffered. If BAC did not perform as promised under the contract, then Fannie Mae may bring a claim against BAC. BAC's alleged failure, however, is not [plaintiff's] to contest or remedy.") (citations omitted); Lara, 2013 WL 3088728, at *3 (finding that the Seller/Servicer Guide "is at best, a contract between Fannie Mae and its servicers. It is not for the benefit of Plaintiffs and imposes no duties on any entity vis-a-vis the borrower. The Custodial Agreement, too, is not for the benefit of any borrower, but is an agreement between Fannie Mae and unknown entities. Even if [WAMU or Chase] was a party to either of these documents and breached its obligations under the documents, that failure would be for Fannie Mae, not Plaintiffs, to prosecute.").

Fifth, plaintiff's contention that pursuant to Minn. Stat. § 580.02, no foreclosure could be pursued when she was not in default of the Note is without merit. Section 580.02 requires that for a mortgagee to foreclose by advertisement, "some default in a

condition of such mortgage has occurred, by which the power to sell has become operative. . . ."   Minn. Stat. § 580.02(1); see also Jackson v. Mortgage Elec. Registration Sys., Inc., 770 N.W.2d 487, 469 (Minn. 2009) ("Section 580.02 contains three requirements that must be met before a mortgagee can foreclose by advertisement: (1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative. . . .").  Any assertion by plaintiff that she was not in default is contrary to the Notice of Mortgage Foreclosure Sale, which states "a default has occurred in the conditions of the following described mortgage" and that plaintiff owed a total of $290,060.38 (Complaint, Ex. 8).   See Segura, 2013 WL 3034096, at *1 ("The Seguras deny that Defendants "can prove default in accordance with Article 3 of the UCC." However, it appears from documents attached to the Amended Complaint that, by early 2012, the Seguras were in default. (Id. Ex. 9 (Notice of Mortgage Foreclosure sale) [Doc. No. 19–2 at 7] (stating that default on the mortgage has occurred and noting a balance of $176,262.22 of an original loan of $180,000).").  Plaintiff's allegation that she made loan payments during the pendency of the attempted loan modification are insufficient to rebut the evidence of default reflected on the Notice of Foreclosure and, at any rate, plaintiff submitted no evidence that the payments she made took the loan out of default.

In addition, plaintiff's allegations suggesting that she entered into a loan modification agreement with a non-party cannot save her quiet title claim when she has not asserted that the alleged loan modification agreement was in writing (Complaint, ¶¶20-34).  See Minn. Stat. § 513.33, subd. 2 ("A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth

the relevant terms and conditions, and is signed by the creditor and the debtor."); Christensen v. PennyMac Loan Services, LLC, --- F.Supp.2d ----, 2013 WL 6729142, at *6 (D. Minn. Dec. 19, 2013) ("enforcing an alleged promise to modify plaintiff's loan (the terms of which also were not described) would constitute an "end run" around the [Minnesota Credit Agreements ("MCA")] statute, which requires a loan modification to be in writing and signed by both parties before it is enforceable."); Tharaldson v. Ocwen Loan Serv., LLC, 840 F. Supp.2d 1156, 1162-1163 (D. Minn. 2011) (an alleged loan modification is a credit agreement within the purview of the MCA statute).

Lastly, to the extent that plaintiff is suggesting that the foreclosure was invalid because BACHLS, the entity that allegedly declared the default, was not the holder of the Note, this argument is nothing more than a regurgitation of the discredited "show me the note" theory plaintiff's counsel has posited and the courts in the Eighth Circuit have rejected many times over.  See, e.g., Butler v. Bank of America, N.A., 690 F.3d 959, 962 (8th Cir. 2012) (the "show me the note" argument "is foreclosed by the plain language of Minnesota's foreclosure statute); Stein v. Chase Home Fin., LLC, 662 F.3d 976, 979-980 (8th Cir. 2011) ("[T]he right to enforce a mortgage through foreclosure by advertisement lies with the legal, rather than equitable, holder of the mortgage.  The assignment of the promissory note to another operates as an equitable assignment of the underlying [mortgage],. . . but the right to enforce the mortgage remains with the legal holder of the mortgage ... It is undisputed Chase was the mortgagee of record and held legal title to Stein's mortgage. Chase Bank assigned the mortgage to Chase on September 28, 2008. The assignment was duly recorded in the Hennepin County Recorder's Office. Thus, Chase was the party entitled to commence a foreclosure by

advertisement under Minnesota law.") (internal citation omitted); <u>Ebbighausen v. JP Morgan Chase Bank, N.A.</u>, Civ. No. 10-3120 (JRT/LIB), 2013 WL 53836, at *7 (D. Minn. Jan. 3, 2013) ("the law of this Circuit clearly establishes that different entities can hold the promissory note and legal title to the mortgage, and that the holder of legal title to the mortgage need not possess the promissory note before it can institute foreclosure by advertisement.") (citations omitted); <u>Anderson v. CitiMortgage, Inc.</u>, Civ. No. 12–230 (ADM/AJB), 2012 WL 3025100, at *4 (D. Minn., July 24, 2012) ("Under Minnesota law, the legal title holder of a mortgage, <u>i.e.</u> the holder of the mortgage deed, may foreclose on a property by advertisement.") (citation omitted); <u>Murphy v. Aurora Loan Servs., LLC</u>, Civ. No. 11-2750 (ADM/JJK), 2012 WL 104543, at *3 (D. Minn. Jan. 12 2012) ("Plaintiffs also misread <u>Jackson</u> as standing for the proposition that the mortgage holder needs more than just the recorded mortgage document or assignment to have the right to foreclose under Minnesota law. This is simply not true.") (citation omitted) (internal quotation marks and citation omitted)), <u>rev'd in part on other grounds by</u> 699 F.3d 1027 (8th Cir. 2012) (citing <u>Jackson</u>, 770 N.W.2d at 501).

For all of these reasons, the Court concludes that plaintiff's theories regarding her quiet title claim have no basis in law or fact and Count I must be dismissed.

**B.    <u>Slander of Title</u>**

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages. <u>Paidar v. Hughes</u>,

615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted).  To plead malice, plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").  The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title.  Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).

Plaintiff responded to defendants' motion to dismiss her slander of title claim by essentially restating the allegations from the Complaint.  See Pl.'s Mem., pp. 22-23. The Court finds the claim must be dismissed because plaintiff has alleged no facts from which this Court could infer that the named defendants made a false statement, acted maliciously or that plaintiff suffered any pecuniary loss from a publication concerning title to his property.  See Ko, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title, and this claim will be dismissed.") (internal citation omitted); Lara, 2013 WL 3088728, at *3 (dismissing slander of title claim based on allegation that individuals signing documents lacked

authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority.").

For all of these reasons, defendants' motion to dismiss plaintiff's slander of title claim should be granted.[7]

### C.    Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiff's substantive claims must be dismissed under Rule 12(b)(6), "[she is] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara, 2013 WL 3088728, at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012)

---

[7]      The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); Johnson v. Bank of New York Mellon, Civ. No. 13-2207(DSD/JSM), 2014 WL 129640, at *5 (D. Minn. Jan. 14, 2014); Ko, 2013 WL 3088728, at *4; Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094, 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565(DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013).  Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiff's claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiff's suit be dismissed with prejudice.[8]

## IV.  RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.  Defendants' Motion to Dismiss [Docket No. 9] be **GRANTED**.

2.  This matter be dismissed with prejudice.

---

[8]  "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).  Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.  That is the case here. See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

Dated: January 24, 2014

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 7, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.